UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JYMARIO DAVON DOOLEY,

                Petitioner,

v.

THOMAS MACKIE,

                Respondent.
_____/

Case No. 17-cv-11625

Paul D. Borman
United States District Judge

David R. Grand
United States Magistrate Judge

**OPINION AND ORDER
DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS,
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Petitioner Jymario Davon Dooley filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254. The petition challenges Petitioner's convictions for first-degree, felony murder, Mich. Comp. Laws § 750.316(1)(b), conspiracy to commit assault with intent to rob while armed, Mich. Comp. Laws § 750.157a, Mich. Comp. Laws § 750.89, and assault with intent to rob while armed, Mich. Comp. Laws § 750.89. Petitioner claims that there was insufficient evidence to support his convictions and that the jury's verdict was against the great weight of the evidence. The Court agrees with the State, which argues in an answer to the petition that Petitioner's claims are procedurally defaulted and meritless or not cognizable on habeas review. Accordingly, the Court denies the petition.

# I. BACKGROUND

Petitioner and co-defendant Dreshawn Glaspie were tried before a jury in Jackson County Circuit Court. The facts and evidence at trial have been accurately summarized as follows:

> Defendants' convictions arise from the shooting death of Phillip Johnson, Jr., in the early morning hours of September 29, 2014, in Jackson, Michigan. At trial, Khalil Davenport and William Houston—both of whom testified pursuant to plea agreements that allowed them to plead guilty to unarmed robbery—described the events that led up to Johnson's death. Most significantly, Davenport and Houston testified that [Dreshawn] Glaspie asked them earlier in the evening if they wanted to rob Johnson, and that Houston called Dooley, who owned a gun, after Davenport, Houston, and Glaspie had developed a plan for the robbery and decided that they needed a gun to complete the deed. Later, Davenport, Houston, and Glaspie met up with Dooley, and all of the men agreed that Dooley would participate in the theft of a metal box where Johnson kept his marijuana.
>
> At some point after 1:30 a.m., Davenport went to Johnson's house in order to hang out with Johnson, learn if anyone else was at the home, and find out where the metal box was located. After Davenport exchanged several text messages with Glaspie, the remaining conspirators went to Johnson's house and waited outside. At approximately 3:00 a.m., Johnson indicated that he needed to work in the morning, and Davenport stated that he would go home. Davenport walked to the door, with Johnson following him, and opened it. Outside stood Dooley and Glaspie, both wearing ski masks. Dooley was pointing a gun in Davenport's direction. Davenport and Johnson yelled in surprise. Davenport dropped to the ground—moving out of the way so that Dooley and Glaspie could move past him into the house—and ran out of the residence. As he ran away from the scene, he heard one or two gunshots. Similarly, Houston, who had remained in the driveway during the incident, testified that he heard a gunshot ring out from the front of Johnson's house, prompting him to run down the street.

2

*People v. Dooley*, No. 327942, 2016 WL 6127723, at *1 (Mich. Ct. App. Oct. 18, 2016).

There was additional evidence that Petitioner made certain admissions to an acquaintance named Gonze Hayes. According to Hayes, Petitioner said that he went to a house on the night of the crime, that a gun somehow fired, and that someone was shot; he then grabbed some "weed" and ran. *See* 4/21/15 Trial Tr. at 74-80, ECF No. 7-8, PgID 743–749.

Neither Petitioner, nor Glaspie, testified or presented any witnesses. Petitioner's defense theory was that he was not present at Johnson's house on the night of the crime. He also maintained that reasonable doubt existed because there were discrepancies in Davenport and Houston's testimonies, and Hayes' testimony was unreliable because of his substance abuse and other things that could have clouded his judgment or what he had heard.

On April 23, 2015, the jury found Petitioner guilty, as charged, of first-degree, felony murder, conspiracy to commit assault with intent to rob while armed, and assault with intent to rob while armed. On June 4, 2015, the trial court sentenced Petitioner to life imprisonment without the possibility of parole for the murder conviction and concurrent terms of life imprisonment with the possibility of parole for the conspiracy and assault convictions.

3

Petitioner appealed as of right, claiming that the evidence was insufficient to support his convictions and that the verdict was against the great weight of the evidence. He also moved for a remand so that he could file a motion for new trial in the state trial court. The Michigan Court of Appeals granted the motion for a remand, but it limited the remand to the issue of whether the verdict was against the great weight of the evidence. *See People v. Dooley*, No. 327942 (Mich. Ct. App. Mar. 17, 2016).

On remand, the trial court held a hearing at which Petitioner's appellate attorney argued that the physical evidence did not point to Petitioner and that the co-defendants who testified against Petitioner got a deal and used Petitioner as a scapegoat. The trial court disagreed with counsel's assessment of the case and stated at the conclusion of the hearing that

> Mr. Dooley was . . . contacted by one of the other three because he'd have a gun and . . . when they got up there they thought he was just gonna brandish it and they said that he fired it and killed Mr. Johnson. And I remember Mr. Johnson was dying in the arms of his uncle . . . .
>
> The jury heard it all. They were instructed to look much more closely at the co-defendants' testimony because they were getting deals. That was disclosed to them. And after hearing all the evidence the jury found him guilty. And I cannot sit here and say that it was against the great weight of the evidence. He was the only one that had the gun and he was hanging out with these guys, they all went over to rob the other guy of a little bit of marijuana and [a] little bit of cash and killed Mr. Johnson. Your motion is denied.

*People v. Dooley*, No. 2014-3525-FC (Jackson Cty Cir. Ct. Apr. 19, 2016), ECF No. 7-12, PgID 1205.

Following the remand, the Michigan Court of Appeals affirmed Petitioner's convictions. *See Dooley*, No. 327942, 2016 WL 6127723. The Court of Appeals stated that Petitioner's convictions were supported by sufficient evidence and that the trial court did not abuse its discretion when it denied Petitioner's motion for new trial and rejected his weight-of-the-evidence claim.

Petitioner then attempted to file an application for leave to appeal in the Michigan Supreme Court. But he sent his application to the trial court and to the Michigan Court of Appeals instead of the Michigan Supreme Court, and when he tried to correct the error, the Michigan Supreme Court informed him that it was too late to file his application. *See* Answer Opposing Pet. for Writ of Habeas Corpus, ECF No. 6-1, PgID 126-128; *see also* Affidavit of Larry Royster, ECF No. 7-14, PgID 1308.[1]

On May 19, 2017, Petitioner filed his habeas corpus petition, raising the two claims that he presented to the Michigan Court of Appeals. The State argues in an answer to the petition that: both of Petitioner's claims are procedurally defaulted;

---

[1] The number for the Michigan Court of Appeals case mentioned in paragraph two of Mr. Royster's affidavit does not correspond to the actual case number for Petitioner's state appellate case. However, exhibits to the State's answer to the habeas petition clearly demonstrate that Petitioner failed to file a timely application for leave to appeal in the Michigan Supreme Court.

5

Petitioner is not entitled to relief on his first claim because the evidence at trial was sufficient, and the Michigan Court of Appeals did not unreasonably apply any Supreme Court decision; and Petitioner's second claim is not cognizable on habeas review. *See* Answer Opposing Pet. for Writ of Habeas Corpus, ECF No. 6.

In a reply brief, Petitioner reiterates his habeas claims and asserts that his issues were properly raised in the State's appellate courts, that any default is not attributable to him, and that the State's arguments are groundless. He also seeks appointment of counsel, oral arguments, and an evidentiary hearing. *See* Reply Brief in Support of Pet. for Writ of Habeas Corpus, ECF No. 8.

Having reviewed the pleadings and record, the Court agrees with the State's arguments. Accordingly, the Court denies the habeas petition and Petitioner's requests for appointment of counsel, oral arguments, and an evidentiary hearing.

## II. EXHAUSTION OF STATE REMEDIES; PROCEDURAL DEFAULT

A preliminary question is whether Petitioner procedurally defaulted his claims. His failure to properly raise his claims in the Michigan Supreme Court implicates the exhaustion and procedural default requirements in habeas corpus cases. G*ray v. Netherland*, 518 U.S. 152, 161 (1996). The doctrine of exhaustion of state remedies requires state prisoners to give the state courts an opportunity to act on their claims before they present their claims to a federal court in a habeas corpus

petition. *See* 28 U.S.C. § 2254(b)(1), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

The exhaustion requirement is satisfied if the prisoner "invok[es] one complete round of the State's established appellate review process," including a petition for discretionary review in the State's highest court "when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan,* 526 U.S. at 845, 847. Thus, to properly exhaust state remedies, a prisoner must fairly present the factual and legal basis for each of his claims to the state court of appeals and to the state supreme court before raising the claims in a federal habeas corpus petition. *Wagner v. Smith*, 581 F.3d 410, 414–15 (6th Cir. 2009).

Petitioner raised his habeas claims in the Michigan Court of Appeals, but he did not fairly present his claims to the Michigan Supreme Court. Although he attempted to file an application for leave to appeal in the Michigan Supreme Court, he mailed his application to the wrong courts, despite clear instructions on where to mail the application. When he attempted to correct the error, the Michigan Supreme Court stated that the Michigan Court Rules precluded it from filing the application at such a late date.

"If the petition[er] fails to raise a claim on appeal, in violation of a state procedural rule, that claim is subject to procedural default and will not be reviewed by federal courts unless the petitioner demonstrates cause and prejudice for his

default." *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015). Petitioner has not shown "cause" for his procedural default. Instead, he merely states that any default or non-compliance with rules is not attributable to him. Because Petitioner has not shown "cause" for his noncompliance with Michigan's Court Rules, the Court need not determine whether Petitioner was prejudiced by his procedural error. *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000).

In the absence of "cause and prejudice," a habeas petitioner may pursue a procedurally defaulted claim if he can demonstrate that the Court's failure to consider his claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.' " *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner has not presented the Court with any new evidence. Therefore, his claims are procedurally defaulted. For the following reasons, Petitioner's claims also lack substantive merit.

### III. THE MERITS

In his first claim, Petitioner alleges that there was insufficient evidence to support his convictions because there was no showing that he participated in the crime. He contends that the primary evidence against him was the testimony of witnesses who were unreliable. In his only other claim, Petitioner alleges for similar reasons that the verdict was against the great weight of the evidence.

A "weight-of-the-evidence argument is a state-law argument," and "a federal court is only allowed to review issues of federal law in a habeas proceeding." *Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007). Therefore, the only questions here are whether the evidence was sufficient to sustain Petitioner's convictions and whether the state appellate court's adjudication of Petitioner's claim was objectively reasonable.

**A. Clearly Established Federal Law**

**1. Generally**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court may not grant an application for the writ of habeas corpus on any claim that was adjudicated on the merits in state court unless the state-court decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law," as determined by the United States Supreme Court, or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in

9

the State court proceeding." 28 U.S.C. § 2254(d). A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

## 2. Clearly Established Federal Law for Sufficiency-of-the-Evidence Claims

The critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (internal citations and footnote omitted) (emphases in original). "Circumstantial evidence may support a conviction, *McKenzie v. Smith,* 326 F.3d 721, 727 (6th Cir. 2003), and such evidence need not remove every reasonable hypothesis except that of guilt. *Walker v. Russell,* 57 F.3d 472, 475 (6th Cir. 1995)." *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006).

Under AEDPA, moreover, a habeas court's "review of a state-court conviction for sufficiency of the evidence is very limited," *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018), because *Jackson* claims are "subject to two layers of judicial deference," *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam*). First, it is the responsibility of the jury to decide what conclusions should be drawn from the evidence admitted at trial. *Johnson*, 566 U.S. at 651 (quoting *Cavazos v.*

11

*Smith*, 565 U.S. 1, 2 (2011) (*per curiam*)). "And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " *Id*. (quoting *Cavazos*, 565 U.S. at 2); *see also Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017) (stating that "two layers of deference apply [to a sufficiency-of-the-evidence claim], one to the jury verdict, and one to the state appellate court"), *cert. denied*, 138 S. Ct. 1283 (2018).

### B. Application

Petitioner makes three arguments to support his claim that there was insufficient evidence at trial to support his convictions. *See* Pet. at 5 and Attachment A, pp. 25–26, ECF No. 1, PgID 5, 46–47. The Court addresses each of Petitioner's arguments in turn.

#### 1. Presence

Petitioner alleges first that there was insufficient evidence of his presence at the scene. William Houston, however, testified that, after finalizing the plan to rob Johnson, he, Petitioner, and Glaspie went to Johnson's home to commit the robbery. After the three of them arrived at Johnson's house, they waited in the driveway for about ten or fifteen minutes. Johnson's front door then opened, and Petitioner ran to the door with Glaspie. A few seconds later, Houston heard a gunshot coming from

the house, and he ran away. He saw Davenport and Glaspie running behind him, but not Petitioner. *See* 4/22/15 Trial Tr. at 23–37, PgID 942–956.

Davenport testified that he was inside Johnson's house before the shooting, and as he opened the door to leave the house, he saw Petitioner at the door. Petitioner was wearing a mask, and he pointed a gun in Davenport's direction. Petitioner then went inside the house, and as Davenport fled, he heard one or two gunshots. He saw Houston and Glaspie running behind him, but not Petitioner. *See* 4/21/15 Trial Tr. at 167–168, 174–178, 221, 224, 236–237, PgID 836–837, 843–847, 890, 893, 905–906.

According to Gonze Hayes, Petitioner admitted that he was at the victim's home, that somebody got shot, and that he subsequently grabbed some "weed" and ran. *See id.* at 74–80, PgID 743–749. Although Hayes failed to testify that Petitioner had said he shot the victim, Detective Brett Stiles testified that when he interviewed Hayes, Hayes told him that Petitioner had said he shot Johnson. *See* 4/22/15 Trial Tr. at 133, ECF No. 7-9, PgID 1052.

The testimony of Davenport, Houston, and Hayes was ample evidence that Petitioner was present at the crime scene. Their testimonies, moreover, were corroborated in part by Detective Stiles and another law enforcement official. As explained by the Michigan Court of Appeals,

> Deputy [Sheriff] Kyle Ruge testified that he stopped Dooley, who was sweating profusely, at the intersection of Mansion Street and South

13

> Jackson Street at 3:33 a.m., which was only 10 minutes after Duane Gossett, Johnson's uncle, called 911. Detective Brett Stiles testified that the location of the stop was close to Davenport's house and only a half mile from Johnson's house.

*Dooley*, No. 327942, 2016 WL 6127723, at *2.

Petitioner, nevertheless, contends that Davenport, Houston, and Hayes were unreliable witnesses. Petitioner notes that Davenport and Houston agreed to plead guilty to unarmed robbery in exchange for their testimony against him and Glaspie.

Davenport and Houston, however, were candid with the jury about their plea agreements, and the trial court instructed the jurors that Davenport and Houston were considered accomplices whose testimony should be viewed more cautiously than the testimony of an ordinary witness. The trial court also charged the jurors to consider whether the plea agreements that Davenport and Houston made with the prosecutor affected their credibility and tended to show bias or self-interest. 4/23/15 Trial Tr. at 13–14, ECF No. 7-10, PgID 1165–1166. Given these instructions, the jury was able to fairly assess the reliability of Davenport's and Houston's testimonies.

The jury also had an adequate opportunity to assess Hayes's credibility. Although Petitioner contends that Hayes established a partial alibi for his whereabouts on the night of the crime, the Michigan Court of Appeals correctly pointed out that "Hayes identified contradictory time frames throughout his testimony, and he expressly stated that he did not look at a clock when he spoke with

14

Dooley on the night of the incident, so that any time frames identified during his testimony were mere estimates." *Dooley*, No. 327942, 2016 WL 6127723, at *3.

Petitioner also contends that Hayes' testimony was untrustworthy because Hayes (i) could not distinguish between statements that Petitioner made to him and rumors in the community, (ii) was an admitted alcoholic, who had suffered a recent head injury, and (iii) had a motive for suggesting that someone else committed the crime because Hayes himself was a suspect at one time. A reviewing court, however, "does not reweigh the evidence or redetermine the credibility of witnesses . . . ." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). "It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Id*. Thus, "[a]n assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims." *Id.*

Here, the jury could have concluded from all the evidence that Petitioner was present at Johnson's home when the shooting occurred. Thus, Petitioner's argument that there was insufficient evidence of his presence at the scene lacks merit.

### 2. Intent

Next, Petitioner alleges that there was insufficient evidence of the required intent for felony murder. He contends that the conspirators did not plan a shooting, that there was no testimony about an intent to shoot, much less an intent to kill or to

15

cause great bodily harm, and that the testimony demonstrated the shooting was an accident, not felony murder. In Michigan,

> [t]he elements of felony murder are (1) the killing of a person, (2) with the intent to kill, do great bodily harm, or create a high risk of death or great bodily harm with the knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of an enumerated felony.

*People v. Lane*, 308 Mich. App. 38, 57–58 (2014). The only element in dispute here is malice, that is, the intent to kill, the intent to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural tendency of the defendant's behavior is to cause death or great bodily harm. *People v. Aaron*, 409 Mich. 672, 728 (1980).

> The facts and circumstances of the killing may give rise to an inference of malice. A jury may infer malice from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm. Malice may also be inferred from the use of a deadly weapon.

*People v. Carines*, 460 Mich. 750, 759 (1999) (citations omitted).

In the present case, there was testimony that the original plan did not include shooting Johnson. *See* 4/21/15 Trial Tr. at 176–77, 240, ECF No. 7-8, PgID 845–846, 909; 4/22/15 Trial Tr. at 33, 37–38, ECF No. 7-9, PgID 952, 956–957. Nevertheless, Petitioner brought a gun to Johnson's home, and the plan was to brandish the gun to facilitate a robbery. By bringing a gun to Johnson's house for the purpose of robbing Johnson, Petitioner set in motion a force likely to cause death or great bodily harm. Furthermore, Davenport testified that Petitioner pointed the

16

gun in his direction when he opened the door to Johnson's home, *see* 4/21/15 Trial Tr. at 168, ECF No. 7-8, PgID 837, and the medical examiner testified that Johnson died from a gunshot wound to the chest, *see id.* at 50, PgID 719. The jury could have inferred from the use of a deadly weapon and the nature and location of Johnson's injury that Petitioner had an intent to kill Johnson.

Further, the Michigan Court of Appeals reasonably concluded that there was sufficient evidence for the jury to find that Petitioner had the intent necessary for felony murder. *Dooley*, No. 327942, 2016 WL 6127723, at *4. Petitioner's challenge to the malice element of felony murder lacks merit.

### 3. Conspiracy

Petitioner's final argument is that there was insufficient evidence that he participated in a conspiracy. In Michigan, a person is guilty of criminal conspiracy if the person agrees with one or more persons to commit an illegal act or to commit a legal act in an illegal manner. Mich. Comp. Laws § 750.157a; *People v. Seewald*, 499 Mich. 111, 117–18 (2016).

> The "gist" of conspiracy "lies in the illegal agreement"; once the agreement is formed, the "crime is complete." Michigan law requires no proof of an overt act taken in furtherance of the conspiracy. And, because the crime is complete upon the conspirators' agreement, the prosecution need not prove that "the purpose contemplated by the unlawful agreement was accomplished."

*Seewald*, 499 Mich. at 117 (footnotes omitted).

> Further, it is well established that it is not necessary that each of the coconspirators have full knowledge of the extent of the conspiracy:
>
>> A person may be a party to a continuing conspiracy by knowingly co-operating to further the object thereof. *People v. Heidt,* [312 Mich. 629, 20 N.W.2d 751 (1945)]. It is not necessary to a conviction for conspiracy that each defendant have knowledge of all its ramifications. *People v. DeLano,* 318 Mich. 557 [28 N.W.2d 909 (1947)]. Nor is it necessary that one conspirator should know all of the conspirators or participate in all of the objects of the conspiracy. *People v. Garska,* 303 Mich. 313, [6 N.W.2d 527 (1942)].
>
> *People v. Hunter*, 466 Mich. 1, 7 (2002).

Petitioner alleges that Davenport, Houston, and Glaspie formed the plan to rob Johnson and that the conspiracy was complete before he allegedly was invited to join the group and arrived on the scene. There was some testimony that the initial plan to rob Johnson did not involve Petitioner. *See* 4/21/15 Trial Tr. at 147–152, 205, 233, ECF No. 7-8, PgID 816–821, 874, 902.

But there was other testimony that Davenport, Houston, and Glaspie decided they needed a gun to accomplish the robbery. Houston then contacted Petitioner about bringing a gun and participating in the robbery, and Petitioner agreed to join the other three men. He subsequently brought a gun to a meeting with the three other men and agreed with the plan to assault and rob Johnson. *See* 4/21/15 Trial Tr. at 153–157, PgID 822–826; 4/22/15 Trial Tr. at 20–24, ECF No. 7-9, PgID 939–943.

18

"One who joins a conspiracy after it has been formed is as guilty as though he were an original conspirator." *People v. Garska*, 303 Mich. 313, 319 (1942). Therefore, even if there was an initial agreement that did not include Petitioner, the jury could have inferred from the evidence that Petitioner subsequently participated in the conspiracy. Petitioner's challenge to his conspiracy conviction lacks merit.

### C. Summary

A rational juror could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner was guilty of felony murder. Moreover, the state appellate court's conclusion that Petitioner's convictions were supported by sufficient evidence was not contrary to, or an unreasonable application of, *Jackson*. Petitioner is not entitled to relief, given the double deference that applies to his sufficiency-of-the-evidence claim.

### IV. Conclusion

For the reasons given above, Petitioner's first claim lacks substantive merit, his second claim is not cognizable on habeas review, and both of his claims are procedurally defaulted. Further, the state appellate court's decision was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. The state court's decision clearly was not so lacking in justification that there was an error beyond any possibility for fairminded disagreement. Accordingly, the Court denies the petition

for a writ of habeas corpus. The Court likewise denies Petitioner's requests for appointment of counsel, oral arguments, and an evidentiary hearing.

The Court declines to grant a certificate of appealability because reasonable jurists could not disagree with the Court's resolution of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The Court likewise denies leave to appeal *in forma pauperis* should Petitioner decide to appeal this decision. He may apply to the United States Court of Appeals for the Sixth Circuit for a certificate of appealability and for leave to appeal *in forma pauperis*.

IT IS SO ORDERED.

                                              s/Paul D. Borman
                                              Paul D. Borman
Date: May 8, 2020                United States District Judge